JACK PERRY, *as President, etc., et al.,*

*v.*

LAWRENCE BARKER, *individually, etc.*

(No. 15476)

Decided March 18, 1982.

*Webster J. Arceneaux, III and Larry Harless* for petitioners.

*Daniel F. Hedges*, for amicus curiae UMWA, International Union.

*Chauncey H. Browning*, Attorney General, *and Richard L. Earles*, Assistant Attorney General, for respondent.

MCGRAW, JUSTICE:

The petitioners, members and elected representatives of the membership of the United Mine Workers of America (UMWA), seek a writ of mandamus to compel the respondent, the Commissioner of the Department of Labor to enforce the provisions of W. Va. Code § 21-5-14 *et seq.* (1981 Replacement Vol.), requiring certain employers to obtain a bond payable to the State of West Virginia to secure payment of employee wages. The petitioners contend that the respondent has failed to fulfill his duty to enforce the statute. We agree and grant the writ.

The petitioners herein include the officers of District 17 of the United Mine Workers of America (UMWA), members of the Executive Board of District 17 and District Representatives of District 17, all elected representatives of the membership of the UMWA, charged with the responsibility of processing grievances, representing individual members in disputes with their employers and seeking enforcement of the laws of this State governing coal mining and the rights of employees. Three other petitioners are members of Local 8217 of the UMWA and were employees of Marki Coal Corporation until November 5, 1981, when their employer laid them off and failed to pay them various fringe benefits, including vacation pay and other amounts owed. The final two petitioners were employees of Davis Coal Company until January 4,

1982, when the employer was shut down by federal inspectors. Davis Coal Company failed to pay them wages, including overtime, Christmas bonuses and other fringe benefits.

On April 9, 1981, the Legislature enacted various amendments to the West Virginia Wage Payment and Collection Act, W. Va. Code Chapter 21, article 5, which were approved by the Governor, and by constitutional rule became effective July 8, 1981.[1] These amendments are embodied in W. Va. Code §§ 21-5-14 through 16 (1981 Replacement Vol.) and provide that any employer engaged in the construction industry or in the mining industry who has been doing business in the State for less than five years shall obtain a bond payable to the State to secure payment of wages and fringe benefits to employees. Specifically, W. Va. Code § 21-5-14 provides:

> (a) With the exception of those who have been doing business in this State for at least five consecutive years, every person, firm or corporation engaged in or about to engage in construction work, or the severance, production or transportation (excluding railroads and water transporters) of minerals, shall furnish a bond on a form prescribed by the commissioner, payable to the State of West Virginia with the condition that the person, firm or corporation pay the wages and fringe benefits of his or its employees when due. The amount of the bond shall be equal to the total of the employer's gross payroll of four weeks at full capacity or production, plus fifteen percent of the said total of the employer's gross payroll for

---

[1] W. Va. Const. art. 6, § 30 provides that "no act of the legislature ... shall take effect until the expiration of ninety days after its passage, unless the legislature ... otherwise direct." The purpose of this ninety day period between passage and date of effect is to provide a sufficient period of time to give notice to the public of the contents of the new law, and to provide government officials sufficient time to perform the duties contemplated by the law. Once the ninety day period has expired the law becomes effective and from that moment the executive department has the duty to attend to its faithful execution. W. Va. Const. art. 7, § 5.

four weeks at full capacity or production. The amount of the bond shall increase or decrease as the employer's payroll increases or decreases: Provided, that the amount of the bond shall not be decreased, except with the commissioner's approval and determination that there are not outstanding claims against the bond.

Under subsection (b) of W. Va. Code § 21-5-14, the Commissioner of Labor may waive the posting of bond after determining that an employer is of sufficient financial responsibility to pay wages and fringe benefits. The statute provides that "[t]he commissioner shall promulgate rules and regulations ... which prescribe standards for the granting of such waivers ..." The respondent has mandated by regulation standards for such waivers, albeit very strict standards. *See* W. Va. Dept. of Labor, Adm. Reg. 21-5, § 16.04 (Series I 1981).

Subsection (c) of W. Va. Code § 21-5-14 provides flexible options for employer compliance with the bonding requirements. The employer is permitted to post bond in a variety of ways, including surety bonding, collateral bonding, establishment of an escrow account, or any combination of methods approved by the respondent. Subsections (d) and (e) of the statute provide:

(d) Notwithstanding any other provision in this article, any employee, whose wages and fringe benefits are secured by the bond, as specified in subsection (c) of this section, has a direct cause of action against the bond for wages and fringe benefits that are due and unpaid. ...

(e) Any employee having wages and fringe benefits unpaid, may inform the commissioner of the claim for unpaid wages and fringe benefits and request certification thereof. If the commissioner, upon notice to the employer and investigation finds that such wages and fringe benefits or a portion thereof are unpaid, he shall make demand of such employer for the payment of such wages and fringe benefits. If payment for such wages and fringe benefits is not forthcoming within the time specified by the commissioner, not to exceed

thirty days, the commissioner shall certify such claim or portion thereof, and forward the certification to the bonding company or the state treasurer, who shall provide payment to the affected employee within fourteen days of receipt of such certification. The bonding company, or any person, firm or corporation posting a bond, thereafter shall have the right to proceed against a defaulting employer for that part of the claim of the employee paid.

Subsection (f) requires any employer subject to the bonding provisions to post in the work place either a copy of the bond or notification of waiver of the bond by the Commissioner. Subsection (g) provides for the termination of the bond upon certain specified circumstances.

W. Va. Code § 21-5-15 provides criminal penalties for any employer who knowing and willingly fails to provide and maintain a bond as required by W. Va. Code § 21-5-14, or disposes or relocates assets with the intent to deprive employees of their wages and fringe benefits.

W. Va. Code § 21-5-16 provides:

> Whenever a person, firm or corporation contracts or subcontracts with an employer, which such contract or subcontract contemplates the performance of construction work or the severance, production or transportation (excluding railroads or water transporters) of minerals, then the prime contractor or subcontractor shall notify the commissioner in writing by certified mail, return receipt requested, of such contract or subcontract as to the employer's name, the location of the job site and the employer's principal business location.

After consulting with UMWA legal counsel as to their interpretation of the amendments, the respondent filed proposed administrative regulations governing the bonding procedures with the Secretary of State on July 10, 1981, and set a public hearing on the regulations for August 28, 1981, at which time he accepted oral and written comments. The respondent allowed written com-

ments to be submitted through September 15, 1981. Regulations incorporating the comments were filed in the Secretary of State's office on October 5, 1981, and were reviewed by the Legislative Rule Making Review Committee on November 10, 1981. The regulations became effective November 19, 1981. The petitioners assert that sometime thereafter, the respondent sent a letter to notify approximately 6,000 employers that the amendments required the posting of a bond to ensure payment of wages and benefits. The respondent disputes the petitioners' assertion, contending that this letter was sent to 7,818 employers who were classified by Department of Employment Security records as being subject to the bonding provisions.

The petitioners contend that the respondent has failed to enforce the provisions of the amendments in that: (1) the respondent has failed to require covered employers to post bonds as required by the act and that no bonds have been posted as of the date the petition was filed; (2) the respondent has failed to allocate the necessary clerical and staff personnel to enforce the act; (3) the respondent has failed to enforce the criminal provisions of the act; and (4) the respondent has failed to require contractors to notify him by certified mail of the existence of subcontractors.

The petitioners contend that the failure of the respondent to enforce these provisions of the act has resulted in the deprivation of numerous employees represented by the UMWA, including the five petitioners named herein, of the protection of the act and of the wages and benefits to which they are entitled. They ask this Court to compel the respondent to establish a plan to implement the provisions of the act which will identify employers subject to the act and require them to post a bond and will identify contractors and subcontractors and require appropriate notices to be sent.

In reply, the respondent contends that he has complied with the requirements imposed upon him by the statute and that a writ of mandamus would be inappropriate since he has already taken all action requested by the

petitioners. He asserts: (1) that the Department of Labor was allocated no funds for implementation of the bonding provisions, requiring a shifting of the workload and personnel of the department to provide clerical and staff personnel which included abolition of a small division of the department to provide a staff assistant, transfer of the respondent's personal secretary to provide clerical personnel, and shifting of responsibilities of other duties of Wage and Hour Division inspectors to provide inspectors for the program; (2) that the respondent conducted training sessions for the Wage and Hour staff on November 17, 18 and 19, 1981, to cover enforcement of the bonding provisions; (3) that the respondent assigned employers by geographical area to the inspectors who were required to visit all employers on their lists, determine whether the employers were subject to the bonding requirements and determine the amount of the weekly payroll during the peak period; (4) that the inspectors returned their reports to the Department of Labor where the amount of the bond was calculated; (5) that a letter was then sent to the employers stating the amount of the bond required and informing them that they must comply within ten days of the date of the letter; (6) that the ten-day period on the first set of letters expired on February 8, 1982, and that at that time inspectors will be instructed to obtain warrants within 24 hours for the arrest of employers who have not obtained a bond; (7) that at least one warrant of arrest has already been issued in a case where the employer was preparing to institute bankruptcy proceedings; and (8) that the new listings of employers will be requested quarterly from the Department of Employment Security. The respondent also contends that Davis Coal Company has been doing business in the state for at least five consecutive years and is for that reason exempt from the bonding provisions of W. Va Code § 21-5-14.

The petitioners resist the respondent's argument contending the respondent's method of enforcement is inadequate and will not implement meaningful and effective enforcement of the bonding provisions of the Wage

Payment and Collection Act. We appreciate the petitioners' concerns. The respondent herein defends, pleading that he has insufficient funds and staff[2] to implement meaningful enforcement of the act. Though his efforts to police the bonding provisions of the act are laudable, we must recognize that in the face of the fiscal and personnel limitations within the Department of Labor, the respondent's approach is an inadequate solution. This is obvious from the fact that although there exist 7,818 employers who must be inspected to determine if they are required by statute to post bonds, the respondent has only two inspectors. Thus it is not surprising that no bonds had been posted as of the date the petition herein was filed.

"Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law." Syllabus Point 3, *Cooper v. Gwinn*, ____ W.Va. ____, 289 S.E.2d 423 (1982).

The petitioners, as members of the class whom W. Va. Code §§ 21-5-14 through 16 was designed to protect, have a clear right to the enforcement of the bonding and notice provisions contained therein. *Cooper v. Gwinn, supra.* The statutes provide that employers *"shall* furnish a bond ...," W. Va. Code § 21-5-14 (emphasis added), and that contractors and subcontractors *"shall* notify the commissioner ...." W. Va. Code § 21-5-16 (emphasis added). "It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation." Syllabus Point 1, *Nelson v. Public Employees Ins. Board*, ____ W.Va. ____, 300 S.E.2d 86 (No. 15468 March 4, 1982); *Cooper v. Gwinn, supra.*

---

[2] The Department of Labor has a staff of approximately twenty-five members, of which four members are allocated to the Wage and Hour Division. *See* 1981 W. Va. Bluebook at 160-61.

The respondent Commissioner of Labor has a clear legal duty to enforce the bonding and notice provisions of the act. W. Va. Code § 21-1-3 provides that the Commissioner of Labor "*shall* have the . . . duty . . . to see that all laws . . . which the department has the duty, power, and authority to enforce, *are promptly and effectively carried out*." (Emphasis added.) The Wage Payment and Collection Act also provides that "[t]he commissioner *shall* enforce and administer the provisions of this article . . . ." W. Va. Code § 21-5-11 (emphasis added). Moreover, W. Va. Code § 21-5-14 further provides that the bond required of the employer shall be furnished "on a form prescribed by the commissioner . . . ." The language of these statutes is mandatory, and imposes a non-discretionary legal duty on the part of the Commissioner. Mandamus is a proper proceeding by which to compel a public officer to perform a mandatory non-discretionary duty. *See, e.g., Delardas v. County Court,* 155 W.Va. 776, 186 S.E.2d 847 (1972).

The petitioners have no other adequate remedy at law. The employee remedies of proceeding against the bond of his employer, W. Va. Code § 21-5-14, or of a direct legal action against the employer, W. Va. Code § 12-5-12, are meaningless where no bond has been posted and where the employer is financially irresponsible, bankrupt, or absconds the State. And while it is true that there exist criminal penalties for the failure of an employer to post bond, enforcement of these provisions under the method of enforcement advanced by the respondent would not constitute an adequate remedy. The sheer number of violations and the laborious process by which the two inspectors the department does have devoting full time must obtain arrest warrants throughout the various counties of the State, make plain the difficulties with this method of enforcement. Moreover, enforcement of the criminal penalties contained in W. Va. Code § 21-5-15 would afford the petitioners no relief for their lost wages. "While it is true that mandamus is not available where another specific and adequate remedy exists, if such other remedy is not equally as beneficial, convenient, and effective, mandamus will lie." Syllabus Point 4, *Cooper v.*

*Gwinn, supra; see also State ex rel. Smoleski v. County Court,* 153 W.Va. 307, 168 S.E.2d 521 (1969).

The respondent contends that the approach to enforcement he has implemented precludes the issuance of the writ. He argues that issuance of a writ in this case would be meaningless since he has already implemented all the enforcement procedures which he sees possible in light of budgetary and personnel limitations. We reject this argument. The respondent has a duty to promptly and effectively enforce the law. *See* W. Va. Code § 21-1-3. A plea of lack of funds is an insufficient justification for the failure of an executive officer to execute a statutory mandate. *See Cooper v. Gwinn, supra; Moore v. Starcher,* ____ W.Va. ____, 280 S.E.2d 693 (1981).

While it is true that the right of a petitioner to invoke the remedy of mandamus may be lost by reason of action taken by the party against whom the writ is sought when such action occurs before the writ is granted, *see State ex rel. Archer v. County Court,* 150 W. Va. 260, 144 S.E.2d 791 (1965), the action taken must be sufficient to fulfill the duty imposed by law. The action taken by the respondent herein is insufficient to implement the meaningful enforcement of the bonding and notice provisions requested by the petitioners. When the sheer magnitude of the task, which requires inspection of almost 8000 employees located throughout the State, and possible prosecution of many of them, is compared to the scant personnel allocated to perform that task, it becomes obvious that the Commissioner's approach is predestined to failure. We note that under the respondent's scheme of enforcement, if each of the two inspectors assigned to enforce the bonding provisions of the Wage Payment and Collection Act worked an eight-hour day every working day of the year, excluding Saturdays and Sundays, took no holidays, no vacation, no sick leave, or leave of any other kind, and made an average of two inspections per day, and assuming the number of employers subject to the act remained static, it would take more than seven and one-half years for them to complete the inspections.

The petitioners herein have also submitted a plan for enforcement of the act. However, the petitioners' "proposed enforcement plan" appears to be an elaboration in detail upon the approach the respondent is currently pursuing. While the petitioners' plan may, in time, accomplish the goal of enforcement of the act, it suffers, as does the respondent's approach, from being labor-intensive and expensive, attributes which under the current staff assignments of the Department of Labor, vitiate prompt and efficient enforcement.

Our concern with the petitioners' proposed enforcement plan is that it, as the respondent's approach, will result in a substantial lapse of time during which some of the citizens of the State, which the act is intended to protect, can suffer irreparable injury, due to the incapability of the Department of Labor to provide the necessary personnel to implement this enforcement method. Although we believe the petitioners' plan has doubtful prospects for success, we do not here disallow use of the petitioners' proposed enforcement plan by the respondent, but we do believe more efficient procedures exist for enforcement of the act, procedures which require the criminal actors to come forward and defend themselves at their own expense, rather than permit them to gamble that the small staff of the Department of Labor will not seek them out, or will not find them where they are hiding.

After examination of the problem and its possible remedies, we suggest the following methods by which the law could be enforced by the Commissioner. The first method of enforcement requires use by the Commissioner of his statutorily conferred administrative enforcement powers. W. Va. Code § 21-5-11 provides that the Commissioner "*shall* enforce and administer the provisions of this article . . . ." (Emphasis added.) In order to implement this mandate subsection (b) of the statute empowers the Commissioner, or his authorized representative, "to administer oaths and examine witnesses under oath, issue subpoenas, compel the attendance of witnesses, and the production of papers, books, accounts, records, payrolls,

documents and tesimony, and to take depositions and affidavits in any proceeding before said commissioner."

The Commissioner thus has the power to compel the appearance of employers who have been noticed of their duty to post bond and have failed to do so, in order to require them to show cause why they have not complied with the law. The Commissioner need only issue a summons, *see* W. Va. Code § 57-5-1 (1966), or a subpoena duces tecum, *see* W. Va. Code § 57-5-3 (1966), for each of the employers who have failed to respond to the notice, and the offenders will then be required to come forward and produce evidence to explain their unlawful actions. Moreover, obedience with the subpoena can be compelled by attachment proceedings for contempt. *See* W. Va. Code § 21-5-11(c). This method of enforcement permits the Commissioner to compel the violators to come forward and answer the charges against them, thus avoiding the expensive and time-consuming method of contacting each offender with field personnel. Furthermore, the Commissioner should invoke the aid of the Attorney General to assist in the issuance of summonses or subpoeanas, and, if necessary, in contempt proceedings, *see* W. Va. Const. art. 7, § 1; W. Va. Code § 5-3-2 (1979 Replacement Vol.), thus eliminating substantially the cost of enforcement to the Department of Labor.

The second method of enforcement requires invocation of the equitable power of the courts, in a mandatory injunction proceeding, to remedy an existing wrongful condition. The majority of jurisdictions hold that when the interests of the State, or the interests of those entitled to its protection are affected by criminal acts or practices, the State, acting through its governmental agencies, may invoke the jurisdiction of equity to restrain such criminal acts. 42 Am. Jur. 2d *Injunctions* § 160 (1966). A government official entrusted with the protection of citizens' property rights must not hesitate to apply to the government's courts for any proper assistance in the discharge of his duties. This is especially the case where the remedy afforded by the courts is the most efficient and

effective method of securing the rights which the official is sworn to protect.

Prevention of injury to constitutionally protected life, liberty or property is the foundation for equitable jurisdiction. W. Va. Const. art. 3, §§ 1, 10 and 17. Our constitution provides that "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property, or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay." W. Va. Const. art. 3, § 17.

Those employers, liable under the act, who are on notice of their duty to post bond and have failed to do so are in violation of the law, which W. Va. Code § 21-5-15 makes a crime. This wrongful conduct poses a clear and present danger of injury to the contractually based property rights of the employees of such violators. The Commissioner of Labor is charged by law with the duty of protecting these employees from such wrongful criminal conduct. Criminal prosecution, however, is not an adequate remedy under the circumstances, whereas an injunction requiring compliance with the provisions of W. Va. Code § 21-5-14 would furnish effective relief. Thus, in a proceeding brought by the Commissioner an injunction would be a proper remedy. *Cf. State ex rel. Valley Distributors v. Oakley,* 153 W.Va. 94, 168 S.E.2d 532 (1969); *State v. Baltimore & Ohio R. Co.,* 78 W.Va. 526, 89 S.E. 288 (1916); *State v. Ehrlick,* 65 W.Va. 700, 64 S.E. 935 (1909).

Moreover, pursuit of an injunction by the Commissioner would involve little or no cost to the Department of Labor. Such a suit, brought in the name of the State, upon written request of the Commissioner, would be properly instituted by the Attorney General whose office would manage and control the litigation. *See* W. Va. Const. art. 7, § 1; W. Va. Code § 5-3-2 (1979 Replacement Vol.); *State v. Ehrlick, supra.* The proceeding could be brought by the Commissioner of Labor against all offenders individually and perhaps as a class, *see* W. Va. R. Civ. P. 19, 20, and may be brought in the Circuit Court of Kanawha County, *see* W. Va. Code § 56-1-1(f) (1966), thus saving the expense of maintaining separate actions in each of the counties

where the offenders are located. Furthermore, the burden of giving notice of suit to the offenders will be minimal since process may be served on the Secretary of State for all defendants who are corporations or limited partnerships. *See* W. Va. Code § 31-1-15 (1982 Replacement Vol.); W. Va. Code § 47-9-26a (1980 Replacement Vol.); W. Va. Code §§ 56-3-13 and 56-3-13a (Cum. Supp. 1981); *see also* W. Va. R. Civ. P. 4. Also since the action would be one brought in aid of the Wage Payment and Collection Act, costs of the action, including reasonable attorney fees may be assessed against the defendants. *See* W. Va. Code § 21-5-12(b); *Farley v. Zapata Coal Corp.*, ____ W.Va. ____, 281 S.E.2d 238 (1981).

The proceeding we envision is analogous to that conceived by the Legislature in W. Va. Code § 11-12-86 (1974 Replacement Vol.) which prescribes a judicial method to enforce payment of the State corporate license tax. Under the provisions of W. Va. Code § 11-12-86 the Attorney General has the duty to aid the State Tax Commissioner in the collection of corporate license taxes by instituting an action or actions against delinquent corporations in the name of the State. Such action or actions are brought in the circuit court of the county where the seat of government is located. The statute provides that if, upon hearing, it appears to the court that any corporation has failed to pay the tax and penalties assessed against it, the court shall enter an order against the corporation for the amount due plus costs, and if said amount is not then paid the court shall enter an order forfeiting the corporation's charter or right to do business in the State. Moreover, the statute further provides that the court may also, on motion of the Attorney General, grant an injunction against any corporation restraining it from conducting any business in the State, until such tax and costs be paid.

The enforcement approach which we here suggest should be used by the Commissioner of Labor to require compliance with the laws. These methods identify the existing and available legal staff and personnel necessary to implement enforcement of the act, promise *prompt* and

*effective* compliance, and place the cost of enforcement upon the violators of the law, rather than on the taxpaying citizens. When properly managed and controlled this approach could require those who are in violation of the law to appear at the office of the Commissioner with their bonds in hand, while all others who have been noticed need only appear and produce evidence that they are not violating the law. Moreover, all that is required of the Commissioner to implement these methods of enforcement is to advise the Attorney General by letter of his desire to proceed by one or both methods and then cooperate in the development of the case. W. Va. Code § 5-3-2 provides that the Attorney General *"shall* institute and prosecute all civil actions and proceedings in favor of or for the use of the State which may be necessary in the execution of the official duties of any state officer, [the Commissioner of the Department of Labor] . . . on the written request of such officer . . . ." (Emphasis added). Thus upon written request, the Attorney General has a duty to proceed as attorney for the Commissioner.

At the same time the Commissioner is pursuing, with the aid of the Attorney General, these methods of enforcement, those offenders who have been noticed of their duty to post bond and have failed to do so should be prosecuted under the criminal penalties contained in W. Va. Code § 21-5-15. Such prosecution is required to be maintained by the prosecuting attorneys of the various counties. W. Va. Code § 7-4-1 (1979 Replacement Vol.) provides:

> It *shall* be the duty of the prosecuting attorney to attend to the criminal business of the state in the county in which he is elected and qualified, and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender. (Emphasis added.)

Thus by using his staff to advise local prosecutors of the violations, the respondent can enlist the support of the

prosecutors of the counties where the offenses occur to see that the law is faithfully executed.

By the use of these administrative and judicial methods of enforcement to require compliance with the law, and by vigorously prosecuting those who are violating the law, the will of the Legislature will be vindicated, those wage earning taxpayers whom the act is designed to protect will be protected, and rule of law will prevail.

In summary, the duty of all executive officers is "to take care that the laws be faithfully executed." W. Va. Const. art. 7, § 5. Thus, the respondent, as Commissioner of Labor, has the duty to see that the provisions of the Wage Payment and Collection Act are faithfully executed. His duty to enforce the provisions of the statutes is non-discretionary, and although the method which he chooses to implement enforcement is within his discretion, the method chosen must fulfill the mandate imposed by statute to *promptly* and *effectively* enforce the law. W. Va. Code § 21-1-3. The current method of enforcement employed by the Commissioner does not meet this standard, and therefore, the issuance of a writ of mandamus compelling the respondent to take such action as is necessary to enforce compliance with the bonding and notice provisions of the Wage Payment and Collection Act is proper.

Accordingly we award the writ of mandamus and order the respondent Commissioner of Labor to go forward with a *prompt* and *effective* method of enforcement of the provisions of W. Va Code §§ 21-5-14, 21-5-15 and 21-5-16, consistent with this opinion. We will retain jurisdiction over this case in order to insure compliance with the mandate, and we therefore order that within 60 days of the issuance of this writ, the respondent report by way of exhibits and briefs the methods of enforcement he has implemented. Petitioners will then have 30 days to respond to the report of the respondent. Thereafter we will further order as is necessary under the circumstances.

*Writ granted.*