296 S.E.2d 682

**Bonnie DeVAULT**

v.

**Edith NICHOLSON, Acting Supt., WVSPW.**

**No. 15528A.**

Supreme Court of Appeals of West Virginia.

May 27, 1982.

Larry Harless, Webster Jay Arceneaux, III, Charleston, for petitioner.

Richard S. Glaser, Asst. Atty. Gen., Charleston, for respondents.

NEELY, Justice:

Bonnie DeVault and a majority of the inmates at the West Virginia Women's Prison at Pence Springs seek a writ of mandamus to compel the Department of Corrections to continue to operate the

Women's Prison under *W.Va.Code,* 28–5C–1 [1947] *et seq.* Petitioners have been convicted of felonies in West Virginia courts. Respondents are the acting superintendent of the Women's Prison and the Commissioner of the West Virginia Department of Corrections. Petitioners assert that closing the Women's Prison would allow the executive branch to repeal a statute. We agree and grant the writ.

In January, 1982, the Department of Corrections announced its intention to close the Women's Prison by transferring the inmates to the Federal Correctional Institution for Women at Alderson, West Virginia. In response to the decision to close the Women's Prison, petitioners, proceeding *pro se,* sought a writ of habeas corpus, which was amended to add a cause of action in mandamus after this Court granted the writ and appointed counsel. Petitioners sought to prevent their transfer from, and the closing of, the State's only women's prison, and to compel respondents to bring its facility into compliance with constitutional and statutory standards set forth in *Cooper v. Gwinn,* 171 W.Va. 245, 298 S.E.2d 781 (1981). Upon argument of this case it was stipulated in this Court by the commissioner that the department intended to close the prison.

The decision to close the Women's Prison apparently was due to the gloomy forecast of legislative financial support for the State's prisons, coupled with this Court's decision in *Cooper v. Gwinn, supra.* In *Cooper* we held that "inmates incarcerated in West Virginia State Prisons have a right to rehabilitation established by *W.Va.Code,* 62–13–1 and 62–13–4 and enforceable through the substantive due process mandate of article III, § 10 of the *West Virginia Constitution.*"

Respondents have a statutory duty to operate the West Virginia Women's Prison. *W.Va.Code,* 25–1–3 [1977] provides: "The commissioner of corrections *shall* manage, direct, control and govern the following penal or correctional institutions and any others placed under his jurisdiction or control: ... West Virginia State Prison for Women at Pence Springs; .... (emphasis

added by the Court). This same mandatory language is found in *W.Va.Code,* 28–5C–2 [1947] which provides: "The West Virginia state prison for women *shall* be managed, directed and controlled as provided in chapter twenty-five [§ 25–1–1 *et seq.*] of this Code." (emphasis added by the Court). "It is well established that the word 'shall,' in the absence of language in a statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syllabus point 2, *Perry v. Barker,* 169 W.Va. 531, 289 S.E.2d 423 (1982). Thankfully, resort to rules of statutory construction is unnecessary. Indeed, common sense tells us what "shall" means.

Although "[w]e do not claim expertise in [prison management]," *Harrah v. Leverette,* 165 W.Va. 665, 271 S.E.2d 322, 323, 331 (1980), the job of the courts is to enforce clear legislative mandates. As this Court stated in *Cooper v. Gwinn, supra.*

As an officer of the Department of Corrections, the Commissioner is bound by the statutes creating that agency.... Furthermore, as an executive officer the Commissioner has the constitutional duty to "take care that the laws be faithfully executed." *W.Va.Const.* art. VII, § 5. Our Constitution does not permit executive officers to pick and choose the laws they will or will not execute, for if such were the case, the executive department, could, either by commission or omission, [*sic*] model a system of law different from that specified by the people acting through the Legislature. So long as a legislative enactment as law exists, the executive department has the constitutional duty to attend to its faithful execution. 171 W.Va. at 253, 298 S.E.2d at 789.

The Women's Prison was established by an act of the Legislature in 1947. A legislative act is required, then, to close it. Certainly anything that changes the *status quo* is not automatically suspect. Nor will this Court by reflex action preserve the *status quo* if the executive branch has discretionary power to modify it. But a legislative mandate is not to be ignored, and statutory protections for inmates are not just hollow promises.

In the case before us the legislature has not delegated to the executive branch the authority to close the Women's Prison nor is there any inherent authority to do so. The plan, whether viewed as an attempt to implement or to circumvent the *Cooper* directives on prison conditions, is not salvaged by reference to fiscal difficulties.[1] We appreciate chronic budgetary problems; however, the fact remains that the excuse of lack of funds cannot be permitted to undermine statutory entitlements. *See, e.g., Perry v. Barker, supra.*

Therefore, we hold that the Commissioner of Corrections is not authorized to close the West Virginia State Prison for Women in the absence of a statute authorizing him to close it.[2] The issue of whether state-convicted persons can be transferred from a state prison to a federal institution as well as whether the State is constitutionally required to provide a penal institution for adult females, is left to another day.

Writ awarded.

---

1. Although the thought of discharging prisoners from custody annoys us, we again recognize that in certain instances it is a necessary and appropriate remedy. *See, e.g., Harrah v. Leverette, supra,* and *Woodring v. Whyte,* 161 W.Va. 262, 242 S.E.2d 238 (1978).

2. In deciding this case we have considered some of the ramifications of closing the Women's Prison. Our concern extends to what would follow the facility's closing. What if the operation of the institution that received the inmates were terminated? We feel compelled to insert the *caveat* that closing the facility is nearly an irreversible action.

   The *Constitution of the State of West Virginia,* article III, § 5, provides in pertinent part: "No person shall be transported out of, or forced to leave the State for any offence committed within the same." Because "State" is a functional as well as a geographical concept, regardless of whether the federal facility is located within the territorial borders of the State, transferring a prisoner there arguably would effectively transfer her out of state.

   Even if no explicit constitutional problem existed, an entity other than the State of West Virginia would be exercising power over her inmates, subjecting them to rules which this state did not formulate and could not administer. Furthermore, while we are aware of a standard contract with the Federal Bureau of Prisons, whereby treatment, opportunities, and privileges of transferred prisoners would be equal to those of federal inmates except where modified, (*e.g.,* as to West Virginia's work release and parole programs), we are concerned whether all state writs would run against the warden of a federal facility. A state's power of enforcement or claim to obedience does not go beyond its borders. What if a federal corrections officer, controlled by another entity, violates our inmates' rights? Can State habeas corpus writs still be used to challenge conditions of confinements?