TOM CANTERBURY, ADMINISTRATOR OF THE
ESTATE OF WILLIAM ROY GAMBILL, *Deceased*

*v.*

VALLEY BELL DAIRY COMPANY, A Corporation,
and JOHN EDWARD ROCK

(No. 10796)

Submitted September 11, 1956. Decided November 13, 1956.

*Scherer, Bowers & File, Douglas Bowers, L. L. Scherer,* for plaintiffs in error.

*Clay S. Crouse,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Tom Canterbury, as administrator of the estate of William Roy Gambill, deceased, instituted his action against defendants, Valley Bell Dairy Company and John Edward Rock, in the Circuit Court of Raleigh County, for recovery of damages for the death of Gambill, alleged to have resulted from the negligent operation of a motor vehicle by Rock, an employee of Valley Bell Dairy Company. Defendants filed separate special pleas to plaintiff's declaration and to an amended declaration, alleging, in effect, that Valley Bell Dairy Company

was a subscriber, not in default, to the workmen's compensation fund at the time of the death of Gambill, also an employee of Valley Bell Dairy Company, and therefore not liable in an action at law for damages resulting from negligence of its employee Rock. After disposing of questions arising on the pleadings, and the hearing of evidence before a jury, the court sustained a motion made by plaintiff to instruct the jury to find for plaintiff. Under such instruction, the jury returned a verdict for plaintiff for $5,500.00. A motion to set aside the verdict was overruled, and judgment entered thereon.

Valley Bell Dairy Company employs in its business a number of truck drivers. Defendant Rock, at times material, was one of such drivers. Though perhaps not uniform, it was the general practice of such drivers to utilize the assistance of helpers. Applications for work as such helpers were made to Valley Bell Dairy Company, and were approved or disapproved by it. From the applicants approved by the company, truck drivers were permitted, usually, at least, to select the particular helper desired by them. The helpers were paid by the company at the rate of $2.34 per day. Many of the drivers, out of their personal funds, paid additional compensation to the particular helpers selected by or assigned to them. The company apparently had full knowledge of this general practice of the drivers in making such additional payments, but did not supervise or control the same, either as to the practice of making such additional payments or as to the amounts of such additional payments. It is not contended that the company reimbursed the drivers for any additional compensation paid by them to the helpers. Neither is there any showing that Valley Bell Dairy Company received any services from such helpers over and above that paid for by it to the drivers and the helpers. At times material, plaintiff's decedent Gambill was the helper of defendant Rock and was being paid by Rock, out of personal funds, and in addition to the $2.34 per day paid by the company, an additional compensation for his work of "Twenty Dollars ($20.00) each half". There is no question that Valley Bell Dairy Company, as

a subscriber to the workmen's compensation fund, reported to the State Compensation Commissioner the total amount of wages paid by it to its employee Rock, and also the total amount of wages paid by it to Gambill, the helper, and paid premiums on such total. The company did not, however, report any sum paid by defendant Rock to his helper out of personal funds. It is the contention of plaintiff that the failure of the company to report such additional funds paid by the drivers to their respective helpers, amounted to a default on the part of the company, within the meaning of Code, 23-2-5, as amended, and precludes the company from claiming any immunity or benefits afforded by the workmen's compensation statutes.

The accident which resulted in the death of Gambill occurred on June 10, 1954. Gambill, sixteen years of age at the time, was engaged in the performance of his duties as helper to defendant Rock, the driver of the truck. He had been performing such duties about nine or ten months. The accident occurred about five thirty in the morning. No witness who testified saw the accident. Several witnesses who heard the noise resulting therefrom went to the scene almost immediately. It appeared, from facts gathered at the scene of the accident, that the truck driven by Rock, in which Gambill was riding, had left the paved portion of the public highway at a sharp angle, traveled sixty feet to where it struck an electric power pole, leaving paint marks on the pole; ran on the berm of the highway a further distance of eighty feet; and then an additional distance of about seventy five feet, over a steep embankment. Witnesses do not agree as to such distances, but the differences seem not material.

A contention of plaintiff should be first disposed of. He questions the right of defendants to prosecute this appeal, for the reason that the order recording the verdict, the motion to set aside the verdict and the assignment of grounds for the motion, were not entered at the term of court at which the verdict was rendered; and that an insufficient memorandum was the only basis for

a *nunc pro tunc* order entered. The verdict was returned at the May, 1955, term of the court. The order complained of was entered at the following term of court, on July 29, 1955. The order purports to be a *nunc pro tunc* order and purports to be founded on a memorandum consisting of the verdict as first returned by the jury, the fact of the amendment of the verdict, and the amended verdict, all a part of the record of the case.

We think there is no substantial merit in plaintiff's contention. While the order purports to be entered *nunc pro tunc,* it was not necessary that it be such an order. The verdict of the jury was a part of the record of the trial and the parties were entitled to have a judgment entered thereon by the court, at the same term or at a following term. The judgment order not having been entered at the term at which the verdict was returned, it was the duty of the court to enter it at the following term. The effect of not having entered an order at the term at which the verdict was returned amounted to no more than a mere continuance of a matter which perhaps should have been disposed of sooner. The order entered was such an order as should have been entered, though no memorandum existed. See *McCoy* v. *Fisher,* 136 W. Va. 447, 67 S. E. 2d 543; *Monongahela Railway Company* v. *Wilson,* 122 W. Va. 467, 10 S. E. 2d 795.; *Payne* v. *Riggs,* 80 W. Va. 57, 92 S. E. 133; *Vance* v. *Ravenswood, Spencer & Glenville Railway Co.,* 53 W. Va. 338, 44 S. E. 461.

It is clear that an employer, within the meaning of the workmen's compensation statutes, who is a subscriber to the workmen's compensation fund, not in default, is not required "to respond in damages at common law or by statute for the injury or death of any employee however occurring". Code, 23-2-6. See *Brewer* v. *Appalachian Constructors, Inc.,* 135 W. Va. 739, 65 S. E. 2d 87; *Makarenko* v. *Scott,* 132 W. Va. 430, 55 S. E. 2d 88; *Mains* v. *J. E. Harris Co.,* 119 W. Va. 730, 197 S. E. 10, 117 A. L. R. 511; *Cox* v. *United States Coal & Coke Co.,* 80 W. Va. 295, 92 S. E. 559, L. R. A. 1918B 1118. The

benefits accruing to an employee of such an employer by virtue of the workmen's compensation statutes constitute the extent of his recovery. *Makarenko* v. *Scott, supra.* It is also clear, however, that a subscriber, upon "Failure to pay premiums as herein provided or to make the quarterly payroll reports required", is deprived "of the benefits and protection afforded by" such statutes. Code, 23-2-5, as amended. See *Brewer* v. *Appalachian Constructors, Inc., supra.*

Whether the action of the trial court, in instructing the jury to return a verdict for plaintiff, can be sustained under the authorities cited depends on whether Valley Bell Dairy Company was a subscriber in default at the time of the accident, either in failing to report, as part of its payroll report, the additional sums paid the helpers by the drivers, or in failure to make payment of premiums as to such additional amounts.

Code, 23-2-5, as amended, provides that the amount of the premiums to be paid into the workmen's compensation fund by subscribing employers shall be "based upon and being such a percentage of the payroll of such employer as may have been determined by the commissioner and be then in effect. The premiums * * * shall be the prescribed percentage of the total earnings of all employees within the meaning of this chapter * * *". Section 1 of the same article defines employees, within the meaning of the workmen's compensation statutes: "* * * All persons in the service of employers as herein defined, and employed by them for the purpose of carrying on the industry, business or work in which they are engaged * * * are employees within the meaning of this chapter * * *". We think the plain purpose of these provisions is to require an employer subscribing to the fund to pay premiums on only the aggregate of the wages paid to the employees by the employer, and not on other or additional earnings of such employees, though such additional earnings may be paid by a co-employee. To say that the employer in the instant case was required to include in its payroll the amount of the wages paid the helper by the

driver employee would be to say, in effect, that the employer must report double the amount of such wages and pay a double premium on the same, since the same amount was reported as earnings of the driver. That, we think, could not have been intended. The language of the statute lends no support to such a position. Moreover, to so hold would render uncertain, and make subject to parol proof, the status of employers as subscribers to the fund, and lessen the certainties of benefits to be received by employees and employers alike. We have found no decision believed in point, and none has been cited. The following authorities have been of help. *Rice Lake Golf Club* v. *Industrial Commission*, 215 Wis. 284, 254 N. W. 530, 138 A. L. R. 541n, 551; *National Film Service* v. *Industrial Commission of Wisconsin*, 206 Wis. 12, 238 N. W. 904, 80 A. L. R. 519, annotated at 522; *Re Ethel Powers*, 275 Mass. 515, 176 N. E. 621, 75 A. L. R. 1220; *United States Fidelity and Guaranty Co.* v. *Spring Brook Farm Dairy*, 135 Conn. 294, 64 A. 2d 39, 13 A. L. R. 2d 769.

We hold, therefore, that defendant Valley Bell Dairy Company was a subscriber, not in default, to the workmen's compensation fund at the time of the alleged negligence of its employee Rock, and not required "to respond in damages at common law or by statute for the death of plaintiff". It is also clear that the defendant Rock, being an employee of a subscriber, not in default, is granted "immunity from liability" as to such alleged negligence. Chapter 136 of the 1949 Acts of the Legislature, Chapter 23, Article 2, Section 6a, Michie's 1955 Code.

The conclusions reached render unnecessary any discussion of other questions raised.

The judgment of the circuit court is reversed, the verdict of the jury set aside, and defendants are granted a new trial.

*Reversed;*
*verdict set aside;*
*new trial awarded.*