407 S.E.2d 399

**Hezekiah SHIFFLETT, Jr., as Personal Representative of William Mark Shifflett, Plaintiff Below, Appellant,**

**v.**

**Robert McLAUGHLIN, Michael R. Staup and Better Business Systems, a Corporation, Defendants Below, Appellees.**

**No. 19841**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided July 12, 1991.

**396**

Mark A. Swartz, W. Michael Moore, Kay, Casto, Chaney, Love & Wise, Charleston, for appellant.

Carl F. Stucky, Jr., Mark E. Kinley, Steptoe & Johnson, Charleston, for appellees.

PER CURIAM:

This is an appeal by the appellant, Hezekiah Shifflett, Jr., as personal representative of William Mark Shifflett, from an order of the Circuit Court of Lincoln County dated May 31, 1990, dismissing the appellant's complaint against the appellees, Robert McLaughlin, Michael R. Staup and Better Business Systems, a corporation. The appellant's sole contention on appeal is that the appellees are not entitled to the immunity from liability set forth in *W. Va. Code*, 23-2-6 [1974] and 23-2-6a [1949] [1] on the ground that Better Business Systems was in default by failing to report its part-time employees' wages and pay workers' compensation premiums for those part-time employees as required under the Workers' Compensation Act. The appellees maintain that they cannot be deprived of their immunity from liability under the Workers' Compensation Act because no notice of delinquency was ever given to Better Business Systems by the Workers' Compensation Fund. For the reasons set forth herein, we reverse the order of the Circuit Court of Lincoln County dismissing the appellant's complaint.

William Mark Shifflett was employed by Better Business Systems as a part-time laborer.[2] On February 9, 1983, he left work with his supervisor, Robert McLaughlin, and another part-time employee, Rick Shifflett, in an automobile owned by Better Business Systems. They drove to a local tavern where they drank beer for a few hours. While driving the Shifflett brothers home after leaving the tavern, Robert McLaughlin drove through an intersection and failed to stop at the stop sign. The vehicle then collided with a guardrail and rolled over an embankment. Mark Shifflett was killed in the accident.

The appellant initially filed a complaint only against Robert McLaughlin. Mr. McLaughlin had been indicted on the criminal charge of causing a death while driving under the influence of alcohol and entered into a plea bargaining agreement pursuant to which he plead guilty to and was convicted of the charge of driving under the influence of alcohol. The complaint was later amended to add Better Business Systems, a corporation, and its owner, Michael Staup, as defendants. As one of their defenses, the appellees argued that they were entitled to assert immunity from liability under the Workers' Compensation Act as set forth in *W. Va. Code*, §§ 23-2-6 [1974] and 23-2-6a [1949].

The appellant subsequently filed a motion to strike the appellees' defense of immunity from liability on the ground that Better Business Systems had failed to re-

---

1. The immunity from liability provided employers under the Workers' Compensation Act is set forth, in relevant part, in *W. Va. Code*, 23-2-6 [1974]:

 Any employer subject to this chapter who shall subscribe and pay into the workmen's [now workers'] compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided, shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments

and shall have complied fully with all other provisions of this chapter.

Furthermore, *W. Va. Code*, 23-2-6a [1949] extends this immunity from liability "to every officer, manager, agent, representative or employee of such employer when he is acting in furtherance of the employer's business and does not inflict any injury with deliberate intention."

2. The employees subject to the Workers' Compensation Act are identified, in relevant part, in *W. Va. Code*, 23-2-1a [1986]: "Employees subject to this chapter are *all* persons in the service of employers and employed by them for the purpose of carrying on the industry, business, service or work in which they are engaged[.]" (emphasis added).

port its part-time employees' wages and also failed to pay premiums with regard to those wages as required under the Workers' Compensation Act. The circuit court denied the appellant's motion by order entered November 17, 1987. Thereafter, on May 31, 1990, the circuit court entered a stipulation and order dismissing the appellant's complaint to provide the appellant an opportunity to appeal from the interlocutory order denying the appellant's motion to strike entered on November 17, 1981. This matter is now before this Court on an appeal of that order.

The sole issue raised in this appeal is whether the appellees are entitled to the benefit of the immunity from liability provided under *W. Va. Code*, §§ 23-2-6 [1974] and 23-2-6a [1949]. The appellant avers that Better Business Systems failed to report its part-time employees' wages and to pay premiums as required under the Workers' Compensation Act, and therefore the appellees are not entitled to immunity from liability under the provisions of *W. Va. Code*, §§ 23-2-6 [1974] and 23-2-6a [1949]. The appellees maintain that they cannot be deprived of their immunity from liability

under the Workers' Compensation Act because no notice of delinquency was ever issued by the Workers' Compensation Fund to Better Business Systems and no determination was made by the Workers' Compensation Fund that Better Business Systems was in default.

A review of the record before us reveals that Ute Staup, who kept the books for Better Business Systems, testified at a deposition that she did not include the wages paid to Mark and Rick Shifflett in her report to the Workers' Compensation Fund.[3] Mrs. Staup also testified that she did not complete a W-4 form for either Mark or Rick Shifflett. Moreover, Mrs. Staup acknowledged that the wages paid to Mark and Rick Shifflett were never included in any of the reports she filed.[4]

In his deposition, Mr. Staup also acknowledged that the wages paid to Mark and Rick Shifflett were not included in the quarterly reports to the Workers' Compensation Fund.[5] Mr. Staup also disclosed that Mark and Rick Shifflett were paid in cash.

---

3. Mrs. Staup gave the following explanation when asked why she had not reported the part-time employee's wages:

 Q. Why did you not include their wages in that figure or include them as employees?
 A. Because they did not supply a social security number, and they were usually never paid by check and they were only hired on a daily or hourly basis, maybe two, three times a year.
 Q. Did you ask them for a social security number?
 A. No.
 Q. Do you have their social security numbers now?
 A. No.
 Q. Have you requested any other information from Rick or Mark Shifflett when they worked for Better Business Services?
 A. No.

4. An affidavit of Nelson B. Robinson, Jr., former commissioner of the Workers' Compensation Fund, is also included in the record before us. In the affidavit, Mr. Robinson represented that he had reviewed the deposition testimony of Mr. and Mrs. Staup. Based upon their testimony that wages for part-time employees were not reported to the Workers' Compensation Fund and that no premiums were paid with respect to those wages, Mr. Robinson concluded

that Better Business Systems was in default by reason of its failure to report all wages for all employees and to pay premiums thereon.

Two affidavits were submitted by Marsha Petrucci, the account manager of the accounting division of the Workers' Compensation Fund. In her first affidavit, Ms. Petrucci stated that Better Business Systems was not in default to the Workers' Compensation Fund at the time of the accident. However, in her second affidavit, Ms. Petrucci stated that she had not been previously advised that Better Business Systems had failed to report wages of part-time employees and to pay premiums to the fund for those wages. Ms. Petrucci, therefore, opined that Better Business Systems was not in good standing for any periods during which time part-time employee wages were not reported and premiums were not paid for those wages, and that Better Business Systems was in default under the Workers' Compensation Act by reason of its failure to fulfill those requirements.

5. Mr. Staup merely confirmed the earlier testimony of his wife:

 Q. This morning we took the deposition of Ute Staup, the bookkeeper, and she informed us that those amounts for labor charges were not included in the Workmen's Compensation quarterly reports? Can you confirm that?

Each employer who subscribes to the Workers' Compensation Fund is required to pay premiums which are "calculated as a percentage of the employer's payroll at the rate determined by the commissioner and then in effect." *W.Va.Code,* 23–2–5 [1986]. When an employer fails to timely pay premiums or timely file payroll reports, the employer's account becomes delinquent under *W.Va.Code,* 23–2–5 [1986]. Moreover, the relevant provisions of *W.Va. Code,* 23–2–5, in effect at the time of the accident in 1983, mandate that an employer who is delinquent in the payment of workers' compensation premiums "shall be deprived of the benefits and protection afforded by this chapter, including section six [§ 23–2–6] of this article, and shall be liable as provided in section eight [§ 23–2–8] of this article, as well as for all benefits paid to said employee as provided by this chapter." [6] Based on the foregoing language of this statute, we recently held in syllabus point 2 of *Kosegi v. Pugliese,* 185 W.Va. 384, 407 S.E.2d 388 (July 9, 1991):

> An employer who failed to timely remit workers' compensation premiums pursuant to W.Va.Code § 23–2–5 (1982) (amended 1984) was delinquent within the meaning of the statutory scheme and

was mandatorily deprived of immunity from common-law liability.[7]

■ What we find from the depositions and what the parties have essentially conceded is that Better Business Systems failed to include its part-time employees in its quarterly payroll reports as required, and also failed to pay premiums as required under the Workers' Compensation Act. Thus, recognizing that Better Business Systems' account was delinquent at the time of the accident as a result of failing to pay premiums pursuant to *W.Va. Code,* 23–2–5, we proceed to the thrust of this case concerning whether the appellees can be deprived of their immunity from liability since no notice of the delinquency was ever given to Better Business Systems by the Workers' Compensation Fund.[8]

The appellees have argued that they cannot be deprived of their defense of immunity because no notice of delinquency was ever given by the Workers' Compensation Fund to Better Business Systems in accordance with *W.Va. Code,* 23–2–5(b). A similar argument was asserted in *Kosegi v. Pugliese, supra.*

■ In *Kosegi v. Pugliese,* the appellees argued that the 1984 amendment to *W. Va. Code,* 23–2–5, which now requires the

A. If she said so, that's true, yes.

**6.** The 1984 amendment to *W.Va.Code,* 23–2–5 essentially rewrote the section. Among other changes, *W.Va.Code,* 23–2–5(b) now requires the commissioner, in writing, to "notify all delinquent employers of their failure to timely pay premiums, to timely file a payroll report, or to maintain an adequate premium deposit" within sixty days of the end of each quarter. Furthermore, *W.Va.Code,* 23–2–5(d) provides, in pertinent part:

> (d) Failure by the employer, who is required to subscribe to the fund and who fails to resolve his delinquency within the prescribed period, shall place the account in default and shall deprive such defaulting employer of the benefits and protection afforded by this chapter including section six [§ 23–2–6] of this article, and he shall be liable as provided in section eight [§ 23–2–8] of this article.

In addition to other minor changes, the 1986 amendment to *W.Va.Code,* 23–2–5 rewrote subsection (f) regarding the reinstatement of employers who are either in default or have had their accounts terminated.

**7.** *See Canterbury v. Valley Bell Dairy Co.,* 142 W.Va. 154, 158, 95 S.E.2d 73, 75 (1956) where we also recognized that: "a subscriber, upon 'Failure to pay premiums as herein provided or to make the quarterly payroll reports required', is deprived 'of the benefits and protection afforded by' such statutes. Code, 23–2–5, as amended."

**8.** As stated in *Kosegi v. Pugliese,* payments are due before the end of the month following the quarter. During hearings, appellees' counsel also contended that because the death of Mark Shifflett occurred before the end of the month following the quarter in which the Better Business Systems was required to remit a payment, the appellee was not delinquent. By that reasoning, an employer could always correct a delinquency in the case of death, by paying within the required period, even though not reporting the wages. The flaw in this argument is obvious. Moreover, the record reflects that Better Business Systems not only failed to pay premiums on its part-time employees' wages preceding the death of Mark Shifflett, but it also failed to pay premiums on those wages at the end of the quarter following his death.

Workers' Compensation Fund to give employers notice of all delinquencies, should be applied retroactively to preclude them from being declared in default since they never received any notice of delinquencies. We considered the retroactive application of Workers' Compensation statutes in syllabus point 1 of *Kosegi v. Pugliese:*

> 'Workmen's compensation statutes, or amendments of such statutes, which affect merely the procedure may be construed to have a retroactive operation; but any such statute or amendment which affects the substantial rights or obligations of the parties to the contract arising from the employment relationship or which impairs the obligation of such a contract cannot be construed to operate retroactively.' Syl. Pt. 3, *Maxwell v. State Compensation Director,* 150 W.Va. 123, 144 S.E.2d 493 (1965), *overruled on another point by Sizemore v. State Workmen's Compensation Comm'r,* 159 W.Va. 100, 219 S.E.2d 912 (1975).

 We then recognized in *Kosegi v. Pugliese,* that, although the 1984 amendment to *W.Va. Code,* 23–2–5 requiring the Commission to give notice to an employer of its delinquent status is procedural in nature, a retroactive application of this amendment would affect the substantive rights of an individual who would be prohibited from bringing a common-law negligence civil action under the 1984 version of the statute, while being entitled to bring that type of action under the 1982 version of the same statutory provision. *Id.,* 185 W.Va. at 387, 407 S.E.2d at 391. We concluded that the 1984 amendment to *W.Va. Code,* 23–2–5 could not be applied retroactively.

Thus, based on our ruling in *Kosegi v. Pugliese,* we conclude that the appellees do not receive the benefit of the notice provisions now included in *W.Va. Code,* 23–2–5 since the 1984 amendment to that statute cannot be applied retroactively.[9] Therefore, the order of the Circuit Court of Lincoln County dismissing the complaint is reversed, and this case is remanded for further proceedings consistent with the principles set forth in this opinion.

Reversed and remanded.

---

9. We question how, under the new statute requiring notice, the commissioner can give notice of delinquency to an employer who is not reporting all employees, such as were the facts in this case. The commissioner would have no way of knowing that the employees were not being reported to the Fund until perhaps an accident would occur. Then, under the new statute, the employer could claim no notice was given of the delinquency.